Eastern District of Kentucky
FILED
APR 21 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-147-GWU

MARVIN R. SAGE,                                                PLAINTIFF,

VS.                       **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                               DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Sage

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Sage

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Sage

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Marvin R. Sage, was found by an Administrative Law Judge (ALJ) to have unspecified "severe" impairments. (Tr. 25). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Sage retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's education and work experience could perform any jobs if he were capable of "light" level exertion, and also had the following non-exertional impairments. (Tr. 416-17). He: (1) needed to alternate between sitting and standing every 15 to 30 minutes; (2) would need to avoid exposure to dust, fumes, smoke, chemicals, noxious gases, and extreme cold; and (3) would have a "limited but satisfactory" ability to relate co-workers, interact with supervisors, deal with work

7

stresses, maintain attention and concentration, and understand, remember, and carry out job instructions. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 417).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Sage alleged disability due to back and leg pain, shortness of breath, nervousness, and "uncontrolled bowels." (Tr. 161).

From a mental standpoint, Dr. Kevin Eggerman conducted a consultative psychiatric examination in April, 2001, and diagnosed only a mild to moderate generalized anxiety disorder, with a Global Assessment of Functioning (GAF) score of 65-70. (Tr. 265). Dr. Eggerman opined that Mr. Sage would have a "fair" ability to handle instructions, relate to co-workers and supervisors, persist on tasks, and tolerate work-related stress. (Tr. 266). State agency psychologists reviewed the record and concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 277, 292). Subsequently, medical records show that Mr. Sage was treated for depression and anxiety by family physicians, and was given Paxil, after which he reported some improvement. (Tr. 311-12). In 2003, the plaintiff sought treatment from the Cumberland River Comprehensive Care Center (CCC), and the staff

psychiatrist, Dr. S. Raza, diagnosed generalized anxiety disorder and "rule out" depressive disorder with a GAF of 55. (Tr. 330-1). A GAF score in this range reflects moderate symptoms. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision), p. 34. Dr. Raza prescribed medications and counseling, and on subsequent visits to the counselor, the plaintiff indicated that he was doing better with the medications, with decreased anxiety and improved sleep. (Tr. 326, 328-9). The plaintiff does not raise any issue regarding mental restrictions on appeal.

The plaintiff's only argument on appeal is that the ALJ did not properly incorporate comments made by Dr. Patrick Donovan, a consultative physical examiner, into the hypothetical question.

Dr. Donovan examined Mr. Sage in March, 2001, and noted his complaint of back pain. (Tr. 257). A lumbosacral spine x-ray was interpreted as showing mild scoliosis, mild anterior spurring, and mild degenerative disc disease. (Tr. 259). Dr. Donovan's physical examination showed forward flexion of 80 degrees, and a straight leg raising test was positive at 70 degrees, but Mr. Sage had a normal grip and intact sensation. (Id.). Dr. Donovan diagnosed chronic low back pain without evidence of radiculopathy, and added that in his opinion, the patient "has pain with activities such as sitting, standing, lifting, and bending." (Id.). However, he was able to move about and handle objects, had good grip and manipulation, had a normal

9

gait and station, and there was no need for assistive devices. (Tr. 259-60). Dr. Donovan did not fill out a specific residual functional capacity form.

Other medical evidence includes reports from state agency physicians who reviewed Dr. Donovan's report and opined that the plaintiff did not even have a "severe" physical impairment (Tr. 276, 306), and office notes from one of the plaintiff's treating family physicians, Dr. J. D. Miller, who prescribed ibuprofen for back pain after finding no motor, sensory, or reflex deficits and negative straight leg raising, and who declined the plaintiff's request for "scheduled drugs" (Tr. 270, 311-12). There are also notes from Mr. Sage's subsequent treating physician, Dr. Jose Echeverria, who did prescribe Lortab, although his testing included a normal lumbosacral spine x-ray and his physical findings were negative apart from tenderness and spasms and the lumbosacral spine area. (Tr. 316-19, 338). Neither treating physician suggested any functional restrictions.

The plaintiff argues that, although the ALJ noted Dr. Donovan's comments about pain in her decision, she did not indicate to the VE that the plaintiff would have pain with movements. The plaintiff cites Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004) for the proposition that it was error not to provide any reasoning for rejecting Dr. Donovan's opinion. However, the Wilson decision concerns the necessity under the Commissioner's regulations for giving "good reasons" when a treating physician's opinion is rejected. Id. at 544. Dr. Donovan

10

Sage

examined the plaintiff only once. The weight given to a one-time examiner is considerably less than that accorded to a treating physician. See, e.g., Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978); Her v. Commissioner of Social Security, 203 F.3d 388, 390 (6th Cir. 1999). The Wilson court did not extend its rationale to one-time examiners. Moreover, Dr. Donovan did not list any particular functional restrictions, and to the extent that he did refer to functional capacity, indicated that the plaintiff would not have any specific restrictions. The purpose of the hypothetical question is to describe what the claimant can and cannot do. Webb v. Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004). Given the fact that no treating or examining source provided specific restrictions, that subsequent treating sources found even fewer abnormalities, including a normal lumbosacral spine x-ray, than Dr. Donovan, and that state agency sources who reviewed a portion of the evidence found no "severe" impairment, the ALJ's hypothetical restrictions are supported by substantial evidence.

The decision will be affirmed.

This the __21__ day of April, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE